UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERTHA D.,[1] | ) |
|           Plaintiff, | ) No. 22 CV 6819 |
| v. | ) Magistrate Judge Young B. Kim |
| FRANK BISIGNANO, Commissioner of Social Security, | ) |
|           Defendant. | ) November 17, 2025 |

**MEMORANDUM OPINION and ORDER**

Bertha D. seeks disability benefits asserting that she is disabled by lupus, fibromyalgia, anxiety, and depression. She brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for benefits. For the following reasons, Bertha's remand request is granted:

**Procedural History**

Bertha filed benefit applications in May 2020 claiming disability onset on April 17, 2020. (Administrative Record ("A.R.") 14.) After her applications were denied initially and upon reconsideration at the administrative level, she sought and was granted a hearing before an Administrative Law Judge ("ALJ"). (Id. at 14, 189-193.) Bertha appeared with her attorney at a January 2022 telephonic hearing at which she and a vocational expert ("VE") testified. (Id. at 32-56.) After the hearing, on

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Bertha's first name and last initial in this opinion to protect her privacy to the extent possible.

February 4, 2022, Bertha asked the ALJ to have the record remain open for 30 days to submit additional records. (A.R. 14, 363.) The ALJ appears to have denied the request in his decision, (id. at 14), but additional records Bertha submitted were nonetheless marked as exhibits in the record as "Exhibit 14F," (id. at 365). In March 2022, after the submission of additional medical records, the ALJ found that Bertha had severe impairments including systemic lupus erythematosus, nephritis, fibromyalgia, chronic kidney disease, diabetes mellitus, obesity, immune thrombocytopenia purpura, anxiety, and depression, but that she is not disabled. (Id. at 17-20.) The Appeals Council denied Bertha's request for review, (id. at 1-7), making the ALJ's denial the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Bertha then filed this action seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 8).

## Analysis

Bertha argues that the ALJ: (1) ignored evidence and improperly analyzed Bertha's treatment when assessing her subjective symptoms; (2) improperly interpreted medical evidence to fashion an impermissible "middle ground" physical residual functional capacity ("RFC"); and (3) failed to fully accommodate her moderate concentration, persistence, and pace ("CPP") limitation in her mental RFC. (See generally R. 18, Pl.'s Mem.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir.

2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). But the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation . . . 'sufficient to allow [the] reviewing court[] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). Having considered the record under this standard, remand is warranted.

**A.     Subjective Symptom Assessment**

The court turns first to Bertha's complaint that the ALJ improperly evaluated her symptom statements because he failed to consider certain evidence—specifically Exhibit 14F, Bertha's December 2021 physical therapy records from AMITA Health—favorable to her claim and improperly characterized her treatment as "sparse," "conservative," and "routine." (R. 18, Pl.'s Mem. at 10-13.) A material error here will require a remand. An ALJ's symptom evaluation is entitled to great deference and may be reversed only where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). The ALJ must consider factors like medication efficacy and side

3

effects, daily activities, treatment received, and precipitating pain factors. SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). That said, the court will not disturb a subjective symptom evaluation that is logically based on specific findings and evidence. *See Murphy*, 759 F.3d at 815-16.

The parties disagree about the ALJ's treatment of Exhibit 14F, but neither side comprehensively argues their position. The government argues that the ALJ was not required to consider or discuss Exhibit 14F because despite having been "exhibited," it is not part of the evidentiary record. (See R. 24, Govt.'s Resp. at 8-9 (arguing the "record was closed," following the ALJ's discretionary denial to "hold the record open").) On the other hand, Bertha responds that Exhibit 14F was in fact "admitted into the record." (R. 18, Pl.'s Mem. at 11.)

Despite the ALJ denying Bertha's request to hold the record open to admit the AMITA records, (A.R. 14), the court presumes that Exhibit 14F was included in the record for consideration based on several factors. For instance, when an ALJ receives "additional evidence at or after a hearing that he or she intends to add to the record, [hearing office] staff will mark the information with the next exhibit number." Hearings, Appeals and Litigation Law ("HALLEX") Manual HA 01210.020B.1.[2] And "[i]n most circumstances, the administrative law judge (ALJ) or the Appeals Council

---

[2] The HALLEX Manual is a policy manual laying out "guiding principles, procedural guidance, and information to hearing level and Appeals Council Staff." HALLEX HA 01105.001. Courts may look to the HALLEX Manual as a guide for procedural rules in Social Security cases. *See, e.g., DiRosa v. Astrue*, No. 10 CV 7243, 2012 WL 2885112, at *5 (N.D. Ill. July 13, 2012) (citing *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997); *Baker v. Barnhart*, 2003 WL 21058544, 8 (N.D. Ill. 2003)).

4

(AC) will identify as an 'exhibit' any evidence upon which a finding and decision are based." HALLEX Manual HA 01420.020.

Moreover, when a Commissioner's final decision is appealed to a federal court, his "staff will not place in the administrative record evidentiary material that the ALJ or the AC has not identified as an exhibit." *Id.* And in comparable cases where the Appeals Council receives additional evidence but does not allow it into the evidentiary record, "[t]he documents will be included in the administrative record that is prepared by Court Case Preparation and Review Branch (CCPRB) staff but will not be exhibited." *Id.* That did not occur here. Instead, the Commissioner included Exhibit 14F in the Administrative Record as part of the "exhibited" evidence. These standard procedures raise a strong presumption that Exhibit 14F is part of the evidentiary record, rather than belated records the ALJ declined to consider.

Even if the government is correct that Exhibit 14F is outside the evidentiary record, the ALJ should have accepted Exhibit 14F. An ALJ "will accept [additional] evidence [received after the normal deadline] if he or she has not yet issued a decision and [the claimant] did not . . . submit the evidence before the deadline because" the claimant "actively and diligently sought evidence from a source and the evidence was not received . . . prior to the hearing." 20 C.F.R. § 404.935(a)-(b).[3]

---

[3] The government argues that Exhibit 14F need not be accepted because it was not new, material, and time relevant as required under 20 C.F.R. § 404.970(a)(5). But its contention that the exhibit is not "new because [it was] in existence or available to the claimant at the time of the [hearing]," (R. 24, Govt.'s Resp. at 9), is belied by the ALJ's own observations during the hearing where he noted Bertha was "waiting for" the AMITA records to come in, (A.R. 36). Further, the regulation the government cites pertains to situations where the Appeals Council must consider additional

5

The ALJ here acknowledged that these specific records remained outstanding as of the January 7, 2022 hearing, noting that "we are waiting for some additional records to come" in, including "the physical therapy records from AMITA." (A.R. 36.) He initially "allow[ed] 30 days to get those records in" but noted that "if [Bertha] need[s] additional time [to submit the records], please let me know." (Id. at 36-37.) On January 25, 2022, Bertha submitted the first batch of records, which appear in the record as "Exhibit 13F." (Id. at 14.) Then on February 4, 2022, as instructed, Bertha asked for more time to submit the AMITA records because the records request remained pending despite her "continu[ing] to follow up." (Id. at 363-65.) Bertha submitted the remaining records from AMITA on March 7, 2022. (Id. at 363.) Still, in his March 14, 2022, the ALJ purportedly denied holding the record open because Bertha "has had ample opportunity to submit any outstanding records." (Id. at 14.) In other words, despite Bertha having "actively and diligently sought" the AMITA records that were "not received . . . prior to the hearing," and submitting them before the ALJ had "issued a decision," the ALJ did not "accept the evidence" as the regulation directs. 20 C.F.R. § 404.935(b). This was an error.

Because Exhibit 14F is—or should have been—part of the evidentiary record that the ALJ ought to have assessed, the error of failing to assess Exhibit 14F must be harmless to avoid remand. To understand whether this error is harmless, the court assesses Bertha's argument that the ALJ's failure to discuss Exhibit 14F

---

evidence when reviewing a case, 20 C.F.R. § 404.970, not when the ALJ must consider the evidence, 20 C.F.R. § 404.935.

6

constitutes ignoring "an 'entire line'" of evidence probative of her symptoms, (R. 18, Pl.'s Mem. at 11-12 (quoting *Terry v. Astrue,* 580 F.3d 471, 476 (7th Cir. 2009)), and the government's counter that Exhibit 14F, even if analyzed, would not have changed the outcome, (R. 24, Govt.'s Resp. at 8-10).

Exhibit 14F describes observations of Bertha's condition, her level of functioning, and her goals for the therapy sessions. (See generally A.R. 973-993.) Important here, the records specifically include observations of Bertha's reduced cervical spine and lumbar range of motion throughout December 2021, (id. at 980, 984), reduced shoulder abduction, (id. at 980), and painful shoulder rotation, (id. at 980-82), contemporaneous "signs or symptoms of a fibromyalgia and/or lupus flare-up," (id. at 987), and an "impairment observation" that noted she required "breaks at work due to [chronic fatigue]," (id. at 982). The government argues that any failure to assess Exhibit 14F is harmless because the ALJ discussed other records where Bertha had reported lumbar tenderness, having had intermittent lupus and fibromyalgia flares, and reduced range of motion. (R. 24, Govt.'s Resp. at 9-10).

It is axiomatic that an ALJ must not "dismiss a line of evidence contrary to [his] ruling" or analyze the claimant's alleged limitations in a "cursory" manner, *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009). But the ALJ did not discuss unique evidence in Exhibit 14F that tends to support Bertha's claim. Indeed, Exhibit 14F directly contradicts part of the ALJ's rationale for finding Bertha not disabled. Explaining why he determined Bertha's treatment was conservative, the ALJ described recommended treatment she did not pursue, noting that as of December 2,

7

2021, Bertha "had not followed up with directives to attend physical therapy" to treat her back pain. (A.R. 22 (citing Exhibit 12F).) The ALJ also notes in his decision, "[t]he medical evidence of record is silent in terms of further treatment." (Id.) But Exhibit 14F shows that only days later, on December 8, 2021, she attended physical therapy to treat her pain. (See generally Exhibit 14F.)

Moreover, the ALJ failed to discuss evidence of fibromyalgia or lupus flare-ups, noting that they were, at best, "intermittent" and concluding there was a "general pattern of lupus and fibromyalgia stability and control," including in Bertha's "most recent examinations" in December 2021. (Id. at 23 (citing Exhibits 9F, 13F).) In so finding, the ALJ ignored evidence in Exhibit 14F, including contemporaneous "signs or symptoms of a fibromyalgia and/or lupus flare-up" in December 2021, (id. at 987), and an "impairment observation" requiring her to take "breaks at work due to [chronic fatigue]," (id. at 982).

And while the ALJ highlighted largely "normal" findings, including full or normal range of motion in her joints and spine,[4] (see id. at 21 (describing full range of motion of all joints in May 2020 (citing Exhibit 2F) and full range of "shoulders, elbows, [] wrists . . . hips, knees, [] ankles . . . [and] of the cervical and lumbar spine" and "normal range of motion" in December 2020 (citing Exhibit 5F)), 22 (describing "full range of motion of all joints" in December 2021 (citing Exhibit 13F)), 23 (describing "full range of motion of the extremities" in December 2020 and

---

[4] The ALJ also mentions a single record reflecting "reduced range of motion of the lumbar spine" but then notes Bertha had "full motor strength and intact reflexes" in September 2021. (A.R. 22 (citing Exhibit 12F).)

8

December 2021 (citing Exhibits 5F, 13F)), Exhibit 14F includes records showing that Bertha had reduced cervical spine and lumbar range of motion throughout December 2021, (id. at 980 (December 8), 984 (December 26)), reduced shoulder abduction, (id. at 980), and painful shoulder rotation, (id. at 980-82). The ALJ seems to have failed to consider these abnormal findings.

Notably, these aspects of Exhibit 14F are consistent with treating rheumatologist Dr. Rediet Kokebie's December 2021 opinion that Bertha would occasionally require 30- to 60-minute unscheduled breaks in part because of chronic fatigue. (Id. at 933.) The ALJ ultimately determined that Dr. Kokebie's opinion was "not persuasive" because it was "not supported" by her own December 2021 exam. (Id. at 24.) But failing to consider Bertha's fibromyalgia symptoms evidenced in other December 2021 records amounts to impermissible cherry-picking and runs afoul of SSR 12-2p and the Seventh Circuit's directive that ALJs must consider that fibromyalgia symptoms "can wax and wane so that a person may have 'good days and bad days.'" *Swiecichowski v. Dudek*, 133 F.4th 751, 757-58 (7th Cir. 2025) (emphasis added) (quoting SSR 12-2p, 2012 WL 3104869, at *6). Because the ALJ's failure to assess these aspects of Exhibit 14F may have informed his assessment of Bertha's physical symptoms and his decision to discount Bertha's pain, fatigue, and other fibromyalgia and lupus symptoms, the court cannot say this error was harmless. *See Christine K. v. Bisignano*, No. 22 CV 6523, 2025 WL 2256900, at *4 (N.D. Ill. Aug. 7, 2025).

9

Bertha also argues that in discounting her symptom allegations the ALJ wrongly characterized her treatment regimen as "sparse," "conservative," and "routine." (R. 18, Pl.'s Mem. at 12 (citing A.R. 23).) Bertha claims she sought and received "the kind of treatment to be expected for one with severe fibromyalgia," including physical therapy and immunosuppressants. (Id. (citing A.R. 882, 892, 902, 932, 968).). Further, Bertha asserts that she need not exhibit "abnormal strength and sensation" to establish fibromyalgia but rather must merely show evidence of tender/trigger point sensitivity, which she did. (Id. at 13; see also, e.g., A.R. 852.) Fibromyalgia symptoms are "'entirely subjective'" with few physical manifestations. *Swiecichowski*, 133 F.4th at 757-58 (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Those symptoms include severe fatigue, sleep problems, memory problems, and pain—the severity of which "cannot be measured with objective tests aside from a trigger-point assessment." *Gerstner v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018). And Bertha is correct that a fibromyalgia patient may have normal muscle strength, sensory functions, reflexes, and joints. *See Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017).

Given these difficulties in assessing fibromyalgia symptoms and determining whether this impairment limits a claimant's ability to work, "the ALJ must consider [the] longitudinal record." *Swiecichowski*, 133 F.4th at 758 (quoting SSR 12-2p, 2012 WL 3104869, at *6). The ALJ must also evaluate "the intensity and persistence of [the claimant's] symptoms" by considering the claimant's subjective statements, information from medical sources, and the claimant's reported level of pain,

10

medication, treatment, and daily activities. SSR 16-3p, 82 Fed. Reg. at 49464-66; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). That said, physical examinations can help determine a claimant's ability to work "by revealing the claimant's ability to walk, move, and generally function." *Swiecichowski*, 133 F.4th at 758. Here, the ALJ not only failed to consider Exhibit 14F demonstrating Bertha's level of functioning but also relied on a rationale that appears to conflict with Exhibit 14F.

In short, the ALJ erred by concluding that Bertha's pain was overstated because her examination findings were normal and her treatment sparse, while failing to consider more recent evidence reflecting pain, abnormal findings, and treatment. *See Kelly v. Colvin*, No. 12 CV 5580, 2014 WL 4388546, at *6 (N.D. Ill. Sept. 3, 2014) ("[R]emand is necessary where an ALJ's credibility determination is based on evidence cherry-picked from the record, selected without consideration of the context in which they appear." (quotation and citation omitted)); *see also Swiecichowski*, 133 F.4th at 759 (holding that ALJ must assess symptom reports "holistically over time, keeping in mind that the symptoms of fibromyalgia may manifest in an inconsistent fashion"). On remand, the ALJ must revisit these issues and, if necessary, explain why he discounts Exhibit 14F. *Bakke v. Kijakazi*, 62 F.4th 1061, 1069 (7th Cir. 2023) (finding that ALJs "must rest [their] denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade").[5]

---

[5] In light of this ruling, and because the ALJ may need to perform a new physical RFC on remand, the court declines to comment on Bertha's argument that the ALJ

11

B.  **Mental RFC Assessment**

Bertha argues that the ALJ failed to accommodate her moderate CPP limitation. The ALJ found persuasive the state agency psychological consultants' opinions that Bertha is moderately limited in CPP, (A.R. 70, 112-13), and limited Bertha to "simple routine repetitive tasks with occasional interaction with the public, co-workers, and supervisors," (id. at 20, 24). Bertha says the ALJ should have at least included three 10-minute breaks in the RFC. (R. 18, Pl.'s Mem. at 13-14 (citing A.R. 47-49, 283, 285-86, 869, 870, 892, 901, 939-40)).  At the hearing, the ALJ presented the VE with three hypotheticals, the second of which matched the eventual RFC. (A.R. 20, 52-55.) The VE testified that jobs exist in the national economy to accommodate the second hypothetical, but that three additional 10-minute breaks on top of the normal breaks would be "work preclusive." (Id. at 53-54.)

It is well-established that a limitation to simple and routine tasks may not accommodate a moderate CPP limitation. *See Martin v. Saul,* 950 F.3d 369, 373-74 (7th Cir. 2020) (holding that "someone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be"). But to warrant remand on this basis, the claimant must support the need for something more. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding any error in RFC assessment harmless where claimant presents "no evidence that [CPP] deficits keep him from performing simple, routine, and repetitive tasks"). Bertha did not do so here.

---

improperly interpreted medical evidence to fashion an impermissible "middle ground" physical RFC.

12

To be sure, the ALJ reviewed Bertha's psychological evaluation notes, considered her testimony and reported activities of daily living, and acknowledged that her symptoms limit her ability to work and cause her "to have difficulty maintaining levels of concentration and productivity for skilled work, particularly in socially-intense work environments requiring multitasking under time pressure." (A.R. 19 (citing Exhibits 4F and 5E).) But the ALJ observed that Bertha showed the "ability to sustain focused attention"—at the hearing and as reflected in the record—and the ability to "repeat sequences of action to achieve a goal or objective" such that she could complete many "tasks commonly found in the work setting." (Id.) The ALJ explained Bertha's CPP limitation and accounted for it in the RFC assessment and the hypothetical posed to the VE. Bertha's suggestion that the ALJ must include added breaks in the RFC to account for her moderate CPP limitations has no record support. Remand on this basis is not warranted.

## Conclusion

For the foregoing reasons, Bertha's request is granted, and this matter is remanded for further proceedings consistent with this opinion.

ENTER:

_____
**Young B. Kim**
**United States Magistrate**